## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATENT ONE LLC,<br><br>       Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS,<br>LIMITED LIABILITY COMPANIES,<br>PARTNERSHIPS, AND UNINCORPORATED<br>ASSOCIATIONS IDENTIFIED ON<br>SCHEDULE A,<br><br>       Defendants. | Civil Action No. 25-cv-2008 |

## COMPLAINT

Plaintiff Patent One LLC, ("Plaintiff" or "Patent One"), by and through its undersigned counsel, hereby file this Complaint against The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A hereto (collectively, "Defendants"). Defendants, through online commerce platforms including without limitation Amazon.com, Walmart.com and Temu.com (collectively, the "Seller Aliases"), have infringed, and continue to infringe, on Plaintiff's United States Patent No D949,612 S (the "Asserted Patent") by manufacturing, distributing, importing, offering for sale, and/or selling products encapsulating the patented design in violation of 35 U.S.C. § 271 (the "Infringing Products"). Plaintiff must take immediate action to halt Defendants' ongoing and willful infringement of the Asserted Patent, and to protect unsuspecting consumers from purchasing potentially dangerous and inferior Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's Asserted Patent and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff

1

also seeks monetary relief for the injury it has sustained and is sustaining. In support thereof, Plaintiff states as follows:

## NATURE OF THE ACTION

1.      Patent One is a company based in the state of Delaware engaged in the business of developing products for sale utilizing internet-based e-commerce websites, predominantly Amazon.com. These websites sell Plaintiff's products in the United States of America and abroad. Through its business, Plaintiff has developed unique adjustable organizing cubes for cabinet storage. Specifically, the Plaintiff's designed organizing cube is the subject of the Asserted Patent.

2.      Plaintiff applied for a patent with the United States Patent and Trademark Office on April 7, 2021, and was granted the Asserted Patent, U.S. Patent No. D949,612 S on April 26, 2022. The patented design represents novel appearance of a design for an adjustable organizing cube for organizing cabinet drawers, distinguished from prior art by its unique design. Specifically, the cube introduces innovative features not found in existing designs which provide enhanced aesthetic appeal that were not previously available in the market. A copy of the Asserted Patent entitled "Single panel of an adjustable organizing cube" is attached as **Exhibit 1**.

3.      Patent One is the owner of all right, title and interest in, and has standing to sue for infringement of the Asserted Patent.

4.      After obtaining the registration for the Asserted Patent, Plaintiff conducted an internet inquiry and discovered that the Defendants were selling products that embodied the Asserted Patent, despite having no license or authorization from Plaintiff.

5.      Defendants' Infringing Products are of demonstrably inferior quality and durability compared to Plaintiff's rigorously tested and quality-controlled products, posing potential safety risks to consumers. The Infringing Products threaten to destroy Plaintiff's reputation and goodwill

and cause significant harm to Plaintiff's business, for which there is no adequate remedy because sale of products embodying the Asserted Patent is the core of Plaintiff's business.

6.    On information and belief, Defendants' infringing activities of offering for sale and selling Infringing Products arise from the same transaction, occurrence, or series of transactions. Specifically, on information and belief, Defendants are actively participating in a conspiracy to distribute and sell Infringing Products to United States consumers. Further, Defendants, on information and belief, are knowingly and systematically working in concert to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products as part of a coordinated scheme to profit from patent infringement. Moreover, the Infringing Products and their corresponding listings share similar characteristics suggestive of common ownership or scheme.

7.    Plaintiff therefore brings this action for federal patent infringement pursuant to 35 U.S.C. § 271, et seq.

## JURISDICTION AND VENUE

8.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1338(a), 1331.

### Personal Jurisdiction

9.    This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat.§ 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may

constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

10.    Alternatively, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district.

11.    Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms and storefronts, via on-line marketplace websites such as Amazon.com, Temu.com, Walmart.com, and others (the "Third-Party Platforms"), under the Seller Aliases, as well as any and all as yet undiscovered accounts with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the United States, including

4

Pennsylvania, can view the one or more of Defendants' online storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

12.    Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

13.    Upon information and belief, Defendants' online storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

14.    Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

15.    Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the offer for sale and shipment of the Infringing Products to the forum.

16.     Plaintiff also markets and offers for sale its genuine Plaintiff's Products to consumers in the U.S., including Pennsylvania through authorized distributors and third parties via the Internet on its Amazon.com webstore.

17.     Upon information and belief, Defendants are deliberately employing and benefiting from coordinated paid advertising and marketing strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array of queries. By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Plaintiff's products on various on-line marketplaces and/or diluting and driving down the retail market price for the (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand and products.

18.     Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

19.     Upon information and belief, many Defendants reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax or nonexistent intellectual property enforcement systems.

20.     Upon information and belief, Defendants are aware of Plaintiff's products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

**Venue**

21.    Venue is proper in this Court under 28 U.S.C. § 1400(b), the specific venue statute for patent infringement actions which states that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement."

22.    Additionally, venue is proper under 28 U.S.C. § 1391(b)(2) which authorizes civil action to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

23.    Here, Plaintiff's infringement investigation centered not only on the sale of products with substantially similar patterns to its Asserted Patent, but also the state in which Defendants were selling the Infringing Products - Pennsylvania. Therefore, Defendants have committed acts of infringement in the forum and a substantial part of the events giving rise to Plaintiff's claims occurred within this forum.

24.    As discussed above and shown in Plaintiff's presented evidence attached as Exhibit 3, each of the Defendants offers for sale products infringing upon Plaintiff's Design to consumers in the forum. Select screenshots of Plaintiff's evidence demonstrates that Defendants were and are offering for sale and/or selling Infringing Products in this forum. This exemplary evidence is included in the table below:

| Seller ID and Doe # | Evidence |
|---|---|
| DOE #1 – |  |
| DOE #5 – | |

25.    Each Defendants' offering of Infringing Products for sale within this forum is a substantial part of Plaintiff's claims and establishes a proper venue in this district. Further, Defendants are not prejudiced by Plaintiff's selection of venue, as they may have the right to file a motion, after receiving notice of the case, contesting venue and explaining why the case should be transferred.

26.    Venue in this district is further justified by 28 U.S.C. § 1391(b)(3) and 28 U.S.C. § 1391(c)(3). Section 1391(b)(3) states "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is an appropriate venue. In addition to

being subject to personal jurisdiction before this Court arising from their tortious acts within the forum, Defendants are foreign companies who do not reside in any other United States judicial district, as provided for in Section 1391(b)(1); meaning that if the Court rejects Plaintiff's claims of substantiality, venue is not otherwise provided for under Section 1391(b) and is appropriate here as this Court has personal jurisdiction over Defendants.

27.    Accordingly, venue is proper before this Court either because a substantial part of events giving rise to Plaintiff's claims occurred in the district, or else because Defendants do not reside in any State and are subject to this Court's exercise of personal jurisdiction, or else because Defendants are nonresidents of the United States.

28.    For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, each of the Defendants is committing tortious acts in Pennsylvania via offering for sale and/or sale of their infringing goods through their online marketplaces, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the Commonwealth of Pennsylvania.

## THE PARTIES

### Plaintiff Patent One LLC

10.    Patent One is a company based out of the state of Delaware. Plaintiff runs an online storefront on its own website, spaceaidhome.com, as well as a popular storefront on Amazon.com at the url: https://www.amazon.com/marketplaceID=ATVPDKIKX0DER, where it sells its organizing cubes using the design illustrated in its Asserted Patent under the brand name "SpaceAid." **Exhibit 2** is a true and correct copy of the Plaintiff's storefront, including images of Plaintiff's genuine organizing cube product (the "Plaintiff's Products") as well as evidence of Plaintiff marking its products with the Asserted Patent number. Plaintiff's products have been

featured in several well-known publications, including USA Today and People Magazine. Plaintiff's product is extremely popular, and has received 5,703 reviews on Amazon, with an exceptional review of 4.4/5.



11.     Plaintiff is a successful business selling, among other items, products using its Asserted Patent. Plaintiff conducts substantial commercial operations including sales and advertising of its patented products. Plaintiff is the owner of all rights, title, and interest in the Asserted Patent which has been registered in the United States.

12.     Among the exclusive rights granted to the Plaintiff under the Patent Act are the exclusive rights to manufacture, distribute, import, offer for sale, and/or sell goods encapsulated by Plaintiff's Asserted Patent.

13.     Plaintiff plans to expand the manufacturing and sales of products which embody its patented designs, including the design in the Asserted Patent. Plaintiff also licenses its patent to other manufacturers who will be using the designs on various products.

14.     Plaintiff's Products are known for their distinctive patented design. This design is broadly recognized by consumers and are highly sought after organizing cubes, with demonstrated commercial success in the market. Organization systems styled after these designs are associated

with the quality and innovation that the public has come to expect from Plaintiff's Products. Plaintiff uses these designs in connection with its Plaintiff's Products, including, but not limited to, the design shown in the below table and in Exhibits 1 and 2. Plaintiff's Products, including those which embody the Plaintiff's Asserted Patent, are marked in compliance with 35 U.S.C. § 287(a) as shown by Exhibit 2.

| Patent Number | Claim | Issue Date |
|---|---|---|
| D949,612 S |  | Apr. 26, 2022 |

15.    Plaintiff has spent substantial time and money advertising its goods and plans to continue expanding its advertising and promotion of genuine goods embodying the Asserted Patent by authorized distributors and third parties via the Internet. Over the past several years, visibility on the Internet, particularly via e-commerce platforms such as Amazon, eBay, TikTok, Temu, Wish, and Walmart, and others, ("Third-Party Platforms"), has become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff and its authorized distributors will be expending significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff and its authorized retailers to educate consumers fairly and legitimately about the value associated with genuine Plaintiff's Products.

Similarly, Defendants' individual Seller Aliases are indexed on the Third-Party Platforms and compete directly with the Plaintiff for space in the search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and its business.

**The Defendants**

16.     Defendants are individuals and business entities who, upon information and belief, reside and/or operate the Seller Aliases in the People's Republic of China and other foreign jurisdictions or redistribute products from the same or similar sources in those locations.

17.     Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants conduct business or assist in business conducted throughout the United States (including within the Commonwealth of Pennsylvania and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of products that embody infringing versions of Plaintiff's Asserted Patent. Defendants conduct business, or assist in business conducted, throughout the United States (including within the Commonwealth of Pennsylvania and this Judicial District) through the public display, online advertising and selling, and importation and distribution, of items that incorporate infringing versions of Plaintiff's Asserted Patent.

18.     The Seller Aliases share unique identifiers establishing a logical relationship between them and reflecting that Defendants' illegal operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their sophisticated infringing operation, including changing the names of their stores multiple times, opening new stores, helping their friends open stores, and making subtle changes to their products and listings.

19.    On information and belief, Defendants create their online Seller Aliases and advertise what appear to be genuine versions of Plaintiff's patented products, without any permission or license from Plaintiff.

20.    Defendants appear to be an interrelated group of infringers, who create the Seller Aliases on various third-party online platforms and design these stores to appear to sell genuine versions of Plaintiff's Products, while they actually sell inferior infringing imitations of Plaintiff's Products without a license. The Seller Aliases share unique identifiers, such as common design elements, the same or similar Infringing Products they offer for sale, product descriptions, shopping cart platforms, and accepted payment methods. They also use the same or similar check-out methods, absent or fake contact information, identically priced or similarly priced Infringing Products and volume sales discounts. These numerous similarities establish a logical relationship between Defendants and show the likelihood that their illegal operations arise out of the same transaction or occurrence.

21.    These tactics used by Defendants to conceal their identities, and the full scope of their illegal operation, make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. Should Defendants provide additional credible information regarding their identities, which they are required to present as part of their defense, Plaintiff will amend the Complaint accordingly.

## DEFENDANTS' UNLAWFUL CONDUCT

22.    The success of online sales of products to the United States has resulted in significant infringement of Plaintiff's Asserted Patent. Consequently, Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps. Plaintiff has identified dozens of fully interactive e-commerce stores, including the Seller Aliases, offering for

sale and/or selling Infringing Products to consumers in this Judicial District and throughout the United States. These Infringing Products are Organizing Cubes that closely mimic the invention patented by Plaintiff, including the same overall shape, dimensions, and aesthetic features.

23.     Specifically, the Infringing Products have the same elongated panel shape, with evenly spaced notches for varying configuration, and other design elements as described in Plaintiff's patent and shown by the images in the table above. Based on Plaintiff's investigation, Defendants have sold countless varying types of these Infringing Products, with an unknown total retail value. The Infringing Products have been distributed to customers across the U.S., severely impacting the market for Plaintiff's genuine products.

24.     Defendants operate at least the Seller Aliases identified in Schedule A and engage in the unauthorized reproduction, public display, and distribution of goods embodying Plaintiff's Asserted Patent and/or substantially similar thereto.

25.     Defendants' sale, distribution, and advertising of Infringing Products are highly likely to cause consumers to believe that Defendants are offering and selling authorized products when in fact they are not. The Infringing Products are organizing cubes that infringe Plaintiff's Asserted Patent, which directly copy the design described in the patent drawings, the overall aesthetic features, including the exact proportional relationships and surface contours that distinguish the patented design. Specifically, the Infringing Products embody the design illustrated in Claim 1 of Plaintiff's Asserted Patent.

26.     These direct correlations between the Asserted Patent drawings and the features of the Infringing Products demonstrate clear infringement of Plaintiff's Asserted Patent. *See* **Exhibit 1**.

27.    Images of the Seller Aliases' Infringing Products demonstrate a verbatim reproduction of these specific patented design elements, causing consumer confusion and market harm. To illustrate, below are several examples using three of the Seller Aliases included in Schedule A attached hereto which show that the Infringing Products embody Plaintiff's Asserted Patent:



| Plaintiff's Patented Design | Infringing Listing |
|---|---|
| | DOE #2 - |
| | DOE #3 - |

28.    Screenshot evidence showing each Seller ID on Schedule A selling Infringing Products is attached as **Exhibit 3.**

29.    Defendants' unauthorized manufacture, distribution, importation, offering for sale, and/or sale of products embodying Plaintiff's Asserted Patent is irreparably harming Plaintiff and its business.

30.    According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. (*See* **Exhibit 4** at 2). Internet websites like the Seller Aliases are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (*See* **Exhibit 5** at 8).

31.    E-commerce retail platforms such as those used by Defendants do not subject new sellers to verification and confirmation of their addresses and identities, thus allowing infringers to extensively use false names and addresses when registering with these e-commerce retail platforms and open multiple Seller Aliases in attempts to avoid detection.

32.    As stated above, Defendants employ and benefit from substantially similar advertising and marketing strategies. Defendants facilitate sales by designing Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Online internet stores like the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Amazon Pay, Western Union, PayPal, and other reputable payment platforms. Online internet stores like the Seller Aliases often include content and images that make it exceedingly difficult for consumers to distinguish such stores from an authorized retailer.

Plaintiff has not licensed or authorized any of the Defendants to manufacture, distribute, import, offer for sale, and/or sell goods embodying Plaintiff's Asserted Patent, and none of the Defendants are authorized to sell Plaintiff's Products.

33.    Upon information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms. Upon information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

34.    Upon information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products on e-commerce platforms such as Amazon, Temu, Walmart, and other Third-Party Platforms. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their illegal operation, and to avoid being shut down.

**The Scope of Defendants' Infringing Activities**

35.    Upon information and belief, each Defendant operates more than one merchant storefront.

36.    Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

## JOINDER OF DEFENDANTS

37.    As stated above, on information and belief, Defendants often operate under multiple fictitious aliases, and unauthorized on-line retailers such as the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use.

Further, such unauthorized retailers include other notable common features on their internet stores such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, similarities in price and quantities, and/or the use of the same text and stock images or artificially produced images.

38.    The Infringing Products offered for sale by unauthorized retailers such as the Seller Aliases often bear irregularities and indicia of being unauthorized that are similar to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

39.    On information and belief, groups of infringers such as Defendants here are typically in communication with each other. They regularly participate in WeChat chat rooms, and communicate through websites such as sellerdefense.cn and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and new lawsuits. *See* **Exhibit 6**. Infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation despite enforcement efforts.

40.    Analysis of financial account transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of the U.S. and this Court. Further analysis of similar cases shows that defendants often sweep their accounts in case their infringing activities are detected, and their accounts are frozen, at which time defendants may settle for small amounts to regain access to the remaining funds or abandon their stores altogether and start fresh with a new alias.

41.    Here, on information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such offshore accounts based outside of the jurisdiction of this Court. On information

and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights.

42.     Defendants appear to be an interrelated group of infringers, who create numerous Seller Aliases and design these stores to appear to be selling genuine versions of Plaintiff's Products, while they are actually selling inferior, unauthorized imitations of Plaintiff's Products. The Seller Aliases share unique identifiers, such as the following: common design elements, the same or similar infringing products that they offer for sale, similar infringing product descriptions and advertising images, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced infringing products and volume sales discounts.

43.     The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences.

44.     These tactics used by Defendants to conceal their identities and the full scope of their infringing operations make it almost impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## COUNT I
## PATENT INFRINGEMENT OF U.S. PATENT No. 949,612 S

48.     Plaintiff hereby re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs.

49.     Defendants make, use, sell, offer for sale, and/or import into the United States products that infringe Plaintiff's Asserted Patent.

50.    Defendants' Infringing Products and the invention claimed in Plaintiff's Asserted Patent are substantially the same. Said sameness deceives prospective purchasers and induces them to purchase Defendants' products supposing them to have come from Plaintiff.

51.    Defendants' Infringing Products misappropriate the novelty of the invention by directly copying the patented design's unique structural mechanism. Specifically, the infringement occurs through reproduction of the exact or substantially similar design of a organizing cube. The mechanism of infringement involves the following: (1) The defendants' products utilize the same elongated, notched panel shape that forms the core of the patented design, (2) the placement and design of the notches on the defendants' products mimic the patented design's appearance, and (3) the notch configuration on the infringing products replicates the patented design's unique varying configuration system, which is integral to the design of the organizing cube.

52.    Defendants' Infringing Products misappropriate the novelty of the invention claimed in the Asserted Patent that distinguished Plaintiff's patented invention from the prior art.

53.    Defendants sell, offer for sale, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the novel invention claimed in the Asserted Patent. No licensing agreements exist between Plaintiff and Defendants regarding the Asserted Patent. Defendants have infringed the Asserted Patent through the acts complained of herein and will continue to do so unless enjoined by this Court.

54.    Defendants have had actual and constructive notice of Plaintiff's rights in the Asserted Patent because the Asserted Patent is clearly marked on products embodying the patented design and the packaging with the patent number in accordance with 35 U.S.C. § 287. Plaintiff also lists the patent number associated its patented design on its online storefront on spaceaidhome.com as shown by Exhibit 2 and below.



55.     Defendants' infringement of the Asserted Patent has been willful and deliberate, as evidenced by their continued sale of infringing products despite actual knowledge of Plaintiff's patent rights, their deliberate copying of the patented design's distinctive features, and their attempts to conceal their infringing activities through multiple seller aliases.

56.     Defendants' infringement of Asserted Patent has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful rights under U.S. patent law to exclude others from making, using, selling, offering for sale, and importing the designs claimed in the Asserted Patent. This infringement has directly impacted Plaintiff's revenue and sales in the cabinet

organizer market, causing a significant decrease in market share and substantial financial losses. Furthermore, the influx of Infringing Products has led to price erosion in the cabinet organizer market, forcing Plaintiff to lower its prices to remain competitive, thereby reducing its profit margins and overall revenue in this specific market segment.

57.    Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

58.    Plaintiff is entitled to recover damages adequate to compensate Plaintiff for Defendants' infringement of the Asserted Patent, including Defendants' profits pursuant to 35 U.S.C. § 289.

59.    Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284, including enhanced damages up to three times the amount found or assessed, due to Defendants' willful infringement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and entry of an Order pursuant to 28 U.S.C. § 1651(a), the All Writs Act, directing as follows:

(1)    Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from the following activities, as Plaintiff will demonstrate (1) that is has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction:

    (a)    making, using, importing, offering for sale, and selling any product not authorized by Plaintiff that includes any reproduction, copy, or colorable

imitation of the invention claimed in the Asserted Patent, or inducing others to do the same;

(b)    effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

(c)    aiding abetting, contributing to, or otherwise assisting anyone in infringing the Asserted Patent.

(2)    Directing that Defendants deliver for destruction all products not authorized by Plaintiff that includes any products embodying a reproduction, copy, or colorable imitation of Plaintiff's Asserted Patent.

(3)    Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third-parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

(a)    Locate all accounts connected to Defendants;

(b)    Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c)    Transfer to Plaintiff all funds restrained in such accounts up to the amount of any monetary relief awarded to Plaintiff by this Court within ten (10) business days of receipt of such Order.

(4)    Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings

and loan associations, other financial institutions, payment processors, and on-line marketplaces, with whom such newly identified accounts are maintained, to carry out the following activity:

(a) Locate all accounts connected to Defendants;

(b) Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c) Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of this Order.

(5) Awarding Plaintiff such damages as it may prove at trial that are adequate to compensate Plaintiff for Defendants' infringement of Plaintiff's Asserted Patent, including but not limited to: lost profits and/or a reasonable royalty, and awarding Plaintiff all of the profits realized by Defendants, or others acting in concert or participation with Defendants, from Defendants' unauthorized use and infringement of the Asserted Patent, in accordance with 35 U.S.C. § 284, together with prejudgment and post-judgment interest, including treble damages due to willful infringement under 35 U.S.C. § 284;

(6) Alternatively, should the Court not award Plaintiff statutory damages, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's Asserted Patent as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(7) Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285, as this is an exceptional case due to Defendants' willful and deliberate infringement; and

(8) Awarding Plaintiff any and all other relief that this Court deems just and proper.

Date: December 22, 2025                    Respectfully submitted,

                                           By: /s/ Michael Mitchell
                                           Michael Mitchell IL #6324363
                                           Shengmao (Sam) Mu NY #5707021
                                           Abby Neu IL #6327370
                                           Keaton Smith IL #6347736
                                           **WHITEWOOD LAW PLLC**
                                           57 West 57th Street, 3rd and 4th Floors
                                           New York, NY 10019
                                           Telephone: (917) 858-8018
                                           Email: mmitchell@whitewoodlaw.com

                                           *Counsel for Plaintiff*