**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATENT ONE LLC, | |
| Plaintiff, | Civil Action No. 25-cv-2008 |
| v. | Judge: Hon. Marilyn J. Horan |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND EX PARTE MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE, <u>AND EXPEDITED DISCOVERY</u>**

1

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... 2

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 2

    A.   Plaintiff's Products and Asserted Patent.............................................................. 2

    B.   Defendants' Unlawful Activities. ........................................................................ 3

THE COURT MAY PROPERLY EXERCISE JURISDICTION .................................... 4

    A.   Defendants are Subject to Personal Jurisdiction Under 42 P.A. C.S.A. § 5322. ................ 5

    B.   Exercising Personal Jurisdiction Comports with Due Process. ........................... 8

THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER ............................ 9

    A.   Plaintiff Has Demonstrated a Strong Likelihood of Success on the Merits. .................... 10

    B.   Plaintiff Has, and Continues To, Suffer Irreparable Harm ............................... 13

    C.   The Balancing of Harms Tips in Plaintiff's Favor............................................. 15

    D.   The Public Interest Is Served by Entry of the Injunction................................... 16

    E.   Defendants Are Properly Joined in this Action. ................................................ 17

    F.   A Temporary Restraining Order Is Appropriate Here. ..................................... 18

    G.   Preventing the Fraudulent Transfer of Assets Is Appropriate. ......................... 19

PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY ..................................... 20

A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ....................................... 22

CONCLUSION................................................................................................................ 23

**INTRODUCTION**

Plaintiff, Patent One LLC ("Plaintiff"), has filed this patent infringement action against the defendants identified on Schedule A to the Complaint (collectively, "Defendants") based on Defendants' sales of infringing versions of Plaintiff's commercially successful and popular patented product. Plaintiff submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction and a temporary asset restraint, an order to show cause why a preliminary injunction should not issue, and for expedited discovery (the "*Ex Parte* Motion").

Plaintiff is requesting temporary *ex parte* relief based on an action for patent infringement against the Defendants. As alleged in Plaintiff's Complaint, Defendants are, *inter alia*, manufacturing, distributing, importing, offering for sale, and/or selling goods embodied by Plaintiff's Asserted Patent. Defendants offered for sale, sold, and distributed unauthorized and infringing products embodying infringing versions of Plaintiff's Asserted Patent (collectively the "Infringing Products") through various fully interactive, commercial internet stores operating under at least the Store Names and Seller Aliases set forth on Schedule "A" to the Complaint (collectively, the "Seller Aliases").

Each Defendant in this action runs a sophisticated illegal operation and is reaching out to do business with Pennsylvania residents by operating one or more commercial, interactive Seller Alias, through which Pennsylvania residents can purchase Infringing Products. Defendants set up their Seller Aliases using online platforms such as Amazon.com, Temu.com, Walmart.com, and others (the "Third Party Platforms"). The Seller Aliases share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation.

1

Plaintiff is forced to file this action to combat Defendants' continued infringement of its patent, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

**STATEMENT OF FACTS**

**A.      Plaintiff's Products and Asserted Patent.**

Plaintiff is the owner of the design patent asserted in this action; No. D949,612 S (the "Asserted Patent"), which has been registered with the United States Patent and Trademark Office. Declaration of Michelle Yu ("Yu Decl.") ¶ 3. A true and correct copy of the Asserted Patent was filed as Exhibit 1 to the Complaint. Through research and testing, Plaintiff created the unique organizing cube design which was subsequently registered with the United States Patent Office on April 26, 2022. Plaintiff currently sells products embodying the Asserted Patent on various online storefronts ("Plaintiff's Products") including, but not limited to, the designs shown in Exhibit 1 to the Complaint, and Plaintiff has licensed the Asserted Patent to other stores, all of which generates a considerable amount of revenue. *Id*. ¶ 4. All of Plaintiff's Products are marked in compliance with 35 U.S.C. § 287(a). *Id.* Plaintiff operated an online storefront at the url: spaceaidhome.com, where it sells its organizing cubes using the design illustrated in its Asserted Patent under the brand name "SpacAid." Below, and attached as Exhibit 2 to the Complaint is a true and correct copy of the Plaintiff's storefront, including images of Plaintiff's Products as well as evidence of Plaintiff marking its products with the Asserted Patent number.

2



Among the exclusive rights granted to Plaintiff under 35 U.S.C. § 271 are the exclusive rights to manufacture, distribute, import, offer for sale, and/or sell goods embodied by Plaintiff's Asserted Patent, and to exclude others from making, using, offering for sale, or selling throughout the United States, or importing into the United States, any product that so resembles Plaintiff's Asserted Patent as to deceive an ordinary observer.

**B.    Defendants' Unlawful Activities.**

The marketplace success of Plaintiff's Products has resulted in significant infringement of the Asserted Patent. Yu Decl. ¶ 5. Because of this widespread infringement, Plaintiff has a

3

worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. *Id*. ¶ 6. Plaintiff has identified numerous fully interactive e-commerce stores, including those operating the Seller Aliases, which were offering for sale and/or selling infringing products embodying the Asserted Patent to consumers in this Judicial District and throughout the United States. *Id*. ¶ 7, Ex. 3 to Complaint.

None of the Defendants in Exhibit 3 to the Complaint have authorization or license to use the Design Patent for any purpose. *Id*. ¶ 8. Additionally, there are many similarities between the Seller Aliases including similar store layouts, similar irregularities, and other indications that the stores are related to one another, suggesting that the products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

### THE COURT MAY PROPERLY EXERCISE JURISDICTION

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act 35 U.S.C. § 271, *et seq*., 28 U.S.C. §§ 1338(a) and 1331.

Venue is proper in this Court under 28 U.S.C. § 1400(b), the specific venue statute for patent infringement actions which states that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement." Additionally, venue is proper under 28 U.S.C. § 1391(b)(2) which authorizes civil action to be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

Federal courts may also "assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos v. Pilatus Aircraft,* 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F. 2d 434, 436 (3rd Cir. 1987)). The determination of personal jurisdiction requires a two-step

4

inquiry. First, the court must determine whether the long-arm statute of the forum allows courts of that state to exercise jurisdiction over the defendant. Fed. R. Civ. P. 4 (e) (1). Second, if the forum state allows jurisdiction, the court must determine whether exercising personal jurisdiction over the defendant in a given case is consistent with the Due Process Clause of the U.S. Constitution. *See IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3rd Cir.1998).

In this matter, Defendants' infringing activities subject them to long-arm jurisdiction in Pennsylvania under 42 P. A. Cons. Stat. § 5322. Furthermore, Pennsylvania's exercise of jurisdiction over Defendants thereunder comports with due process.

**A.      Defendants are Subject to Personal Jurisdiction Under 42 P.A. C.S.A. § 5322.**

Pennsylvania authorizes personal jurisdiction over the Defendant pursuant to 42 Pa. Cons. Stat § 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit… (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth. . . (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit."

Courts regularly confer personal jurisdiction on a given defendant based on that defendant's operation, or use, of an interactive website through which consumers can access the site from anywhere and purchase products, as is the case with Defendants' Seller Aliases, and

allow for customers all over the United States of America (including within Pennsylvania) to view and purchase the Infringing Products, as demonstrated both by the websites themselves which were offering for sale and/or selling Infringing Products to consumers in this Judicial District and throughout the United States, as well as the evidence provided by Third-Party Amazon which shows direct sales of infringing products from each Defendant to consumers in this judicial district. *See* Yu Decl. at ¶ 7, Ex. 3 to Compl, Ex. 1 to Declaration of Keaton Smith (the "Smith Decl."); s*ee also e.g., Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008); *Malletier v. 2016bagsilouisvuitton.com*, No. 16-61554-CIV- DPG, 2016 U.S. Dist. LEXIS 93072, at *3 (S.D. Fla. July 18, 2016).

This Court may properly exercise personal jurisdiction over Defendants because Defendants directly target business activities toward consumers in the United States, including Pennsylvania, through at least the fully interactive Seller Aliases. Specifically, Defendants have targeted sales to Pennsylvania residents by setting up and operating e-commerce stores that target U.S. consumers using one or more seller aliases through which Pennsylvania residents can and have purchased Infringing Products. *See Lorillard Tobacco Co. v. Applewood Party Store, Inc.,* 2006 WL 2925288 (E.D. Mich. 2006) (defendant's local sale of counterfeit "Newport" cigarettes had an economic effect on interstate commerce)*; A1 Mortg. Corp. v. A1 Mortg. And Financial Services, LLC,* 2006 WL 1437744 (W.D. Pa. 2006) (while Plaintiff's provision of services was "predominantly intrastate" in character, its mark was eligible for protection since, even absent an interstate sale, its advertising crossed state lines and, therefore, had entered interstate commerce), see later opinion, *A-1 Mortg. Corp. v. Day One Mortg., LLC,* 2007 WL 30317 (W.D. Pa. 2007) (court awarded permanent injunctive relief in its award of summary judgment to plaintiff). Each

6

Defendant has shipped products infringing Plaintiff's patent to citizens of this forum, causing direct harm to Plaintiff. *See* Smith Decl. Ex. 1.

Each of the Defendants is engaging in interstate commerce, committing tortious acts in Pennsylvania, and has wrongfully caused Plaintiff substantial injury in the Commonwealth of Pennsylvania. Therefore, this Court has personal jurisdiction over Defendants because they have intentionally advertised and sought out to do business in Pennsylvania utilizing their Seller Aliases and websites to offer for sale and/or sell infringing products.

Courts have indeed found that "commercial sellers" on "well-known, national . . . website[s]" are in fact subject to personal jurisdiction, as these Defendants "must have been able to foresee the possibility of being hauled into court [in the present jurisdiction]." *Malcom v. Esposito*, 63 Va. Cir. 440, 446 (Cir. Ct. 2003); *see also EnviroCare Techs., LLC*, 2012 U.S. Dist. LEXIS 78088, at *12. Whether a Defendant physically shipped Infringing Products into Pennsylvania is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state. *See Zippo Mfg. Co. v. Zippo DOT Com*, 952 F. Supp. 1119 (W.D. Pa. 1997); *Rolex Watch, U.S.A., Inc. v. Pharel*, 09 CV 4810 (RRM) (ALC), 2011 U.S. Dist. LEXIS 32249, at 6 (E.D.N.Y. Mar. 11, 2011) (finding personal jurisdiction over defendant, a resident of South Carolina, because he transacted business in New York by monitoring and responding to inquiries for counterfeit watches through websites accessible in New York).

Defendants' direct sales to Pennsylvania of goods infringing on Plaintiff's patent directly establishes personal jurisdiction in this district.

7

B.        **Exercising Personal Jurisdiction Comports with Due Process.**

The assertion of personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts ... such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)). This Court may exercise personal jurisdiction when the Plaintiff can establish that the cause of action at issue arose from the defendant's activities within the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 414 (1984). The Plaintiff initially bears the burden of proving a prima facie case, by a preponderance of the evidence, that the defendant's contacts with the forum state meet the "minimum contacts" test. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985).

Finally, the Court must consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." *O'Connor v Sandy Lane Hotel Co., Ltd*, 496 F.3d 312, 316 (3rd Cir. 2007) (quoting *Int'l Shoe*, 326 U.S. at 316). Because the existence of minimum contacts makes jurisdiction presumptively constitutional, the defendant at step three of the specific-jurisdiction-inquiry process "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. (quoting *Burger King*, 471 U.S. at 477). The burden upon the defendant at this stage of the inquiry is considerable. *See Pennzoil Prods. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 207 (3rd Cir. 1998) (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); *Grand Entm't Group, Ltd., v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3rd Cir.1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."). As the Third Circuit observed:

> The Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness. Among them are the burden on the defendant, the forum State's interest in adjudicating the dispute, the Plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies, and [t]he procedural and substantive interests of other nations.

*O'Connor,* 496 F.3d at 324 (internal quotations omitted).

"The law is clear that, where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the defendant." *Osteotech, Inc. v. GenSci Regeneration Scis.*, 6 F. Supp. 2d 349, 354 (D.N.J. 1998).

Here, the Plaintiff's interest in obtaining effective relief in the forum of its choice and Pennsylvania's interest in protecting its citizens from the sale of infringing goods within its borders are factors that weigh heavily in finding personal jurisdiction of the Defendants. *See Square D*, 2008 WL 4462298 at *12 (concluding that jurisdiction should be exercised in Pennsylvania "because the counterfeit goods in question potentially pose a danger to the public and were sold to residents of this Commonwealth."); *Zippo,* 952 F.Supp. at 1127 (noting Pennsylvania's strong interest in resolving trademark infringement claims implicating its citizens and giving "due regard to the Plaintiff's choice to seek relief in Pennsylvania").

Accordingly, Plaintiff respectfully submits that this Court has personal jurisdiction over Defendants in this action.

### <u>THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER</u>

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65; *Vuitton v. White*, 945 F.2d 569, 573 (3d Cir. 1991). To obtain relief, the moving party must show: (1) a likelihood of success on the merits; (2) they will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief. *Child*

*Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004) (citation omitted). While courts must balance all four factors, *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982), this Circuit has placed significant weight "on the probability of irreparable harm and the likelihood of success on the merits" factors. *FM 103.1, Inc. v. Universal Broad.*, 929 F. Supp. 187, 193 (D.N.J. 1996) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990)).

This Court has routinely granted preliminary injunctive relief when a party's intellectual property rights are threatened by the sale of infringing versions of its products, including patent infringement. *See*, *e.g.*, *Xiaoyan Qian v. The Individuals, et al.* No 2:25-cv-00184, ECF No. 16 (W.D.Pa Feb. 25, 2025) (Colville, R.) (order granting TRO in design patent infringement case); *DDC Technology LLC v. Shenzhentaifeikejiyouxiangongsi, et al.*, No. 2:24-cv-00006, ECF No. 17 (W.D. Pa. Jan. 5, 2024) (Hardy, J.) (order granting TRO in patent infringement case); *Aquapaw Brands, LLC v. Joyi Yan*, *et al.*, No. 2:22-cv-01607, ECF No. 16 (W.D. Pa. Nov. 17, 2022) (Wiegand, J.) (order granting TRO in patent infringement case); *Nifty Home Prods. Inc. v. Ladynana U.S.*, *et al.*, No. 2:22-cv-00994, ECF No. 16 (W.D. Pa. Jul. 13, 2022) (Schwab, J.) (order granting TRO in copyright infringement case); *Shenzhen Meiyunlai Internet Co. Ltd., v. ARTopod*, *et al.*, No. 2:25-cv-00163, ECF No. 18 (W.D. Pa. Feb. 10, 2025) (Ranjan, N.) (order granting TRO in trademark case).

### A.    Plaintiff Has Demonstrated a Strong Likelihood of Success on the Merits.

The Patent Act, 35 U.S.C. § 271(a), states that a patent is infringed by, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." "A design patent protects the non-functional aspects of an ornamental design as seen as a whole

and as shown in the patent." *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450 (Fed. Cir. 1993).

Design patent infringement analysis is governed by the "ordinary observer" test. The Federal Circuit has articulated this test as follows: "[If] in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive an ordinary observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Amini Innovation Corp. v. Anthony California, Inc.*, 211 F. App'x 988, 2007 WL 43262, at **2 (Fed. Cir. Jan. 8, 2007). Design patent infringement requires that the accused design misappropriate the novel ornamental features of the Asserted Patent that distinguish it from the prior art. *Oakley, Inc. v. Int'l Tropic–Cal, Inc.,* 923 F.2d 167, 169 (Fed.Cir. 1991).

 "Each issued patent carries with it a presumption of validity under 35 U.S.C. § 282." *Tinnus Enters., LLC v. Telebrands Corp*., 846 F.3d 1190, 1205 (Fed. Cir. 2017) (citing *Titan Tire Corp. v. Case New Holland, Inc*., 566 F.3d 1372, 1376-77 (Fed. Cir. 2009)). "This presumption is sufficient to establish a likelihood of success on the validity issue, absent a challenge by the accused infringer." *Id*.

Plaintiff is the lawful owner of the Asserted Patent and has all right, title, and interest in and to the Asserted Patent, including the right to seek damages and injunctive relief. Defendants make, use, sell, offer for sale, and/or import into the United States products that infringe the Asserted Patent. The Infringing Products are organizing cubes that infringe Plaintiff's Asserted Patent, which directly copy the design described in the patent drawings, the overall aesthetic features, including the exact proportional relationships and surface contours that distinguish the

11

patented design. Specifically, the Infringing Products embody the design illustrated in Claim 1 of Plaintiff's Asserted Patent.

10.     These direct correlations between the Asserted Patent drawings and the features of the Infringing Products demonstrate clear infringement of Plaintiff's Asserted Patent. *See* Ex. 1-3 to Compl. In the eye of an ordinary observer, the design of Defendants' Infringing Products and the design claimed in the Asserted Patent are substantially the same; indeed, they are virtually identical, and the mechanism of infringement is demonstrated through direct visual reproduction of the Asserted Patent's unique structural elements.

Defendants are engaged in unauthorized manufacturing of products using identical design specifications, marketing and selling products that are substantially indistinguishable from the Asserted Patent, thereby exploiting the distinctive ornamental characteristics protected by the Asserted Patent. The infringement mechanism specifically involves copying the exact elongated panel configuration, replicating the evenly-spaced notch configuration, and reproducing the distinctive aesthetic design elements without authorization.

The strong similarities between the design claimed in the Asserted Patent and Defendants' Infringing Products demonstrate not only Plaintiff's substantial likelihood of success on the merits, but also that Defendants have willfully copied Plaintiff's design. *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1127 (Fed. Cir. 1993) (copying is strong evidence of willful infringement). Thus, Plaintiff has a strong likelihood of proving that Defendants have infringed its Asserted Patent. Defendants have willfully infringed the Asserted Patent through the acts complained of herein and will continue to do so unless enjoined by this Court.

Courts regularly grant TROs to halt infringement of design patents through on-line retail platforms. *See, e.g., Shenzhen Ji'an Health Technology Co., Ltd. v. TOPKIDON, et al*., No. 2:25-

12

cv-00457, ECF No. 19 (W.D.Pa. Apr. 3, 2025) (Hardy, J.) (order granting TRO in design patent infringement case); *Does 1-3 v. The Partnerships and Unincorporated Assocs. Identified on Sch. "A,"* No. 1:21-cv-5220, Dkt. 27 (N.D. Ill.); *Nail All., LLC v. Vishine Enter. Ltd.*, No. SA CV 22-00937-DOC-DFM, 2022 U.S. Dist. LEXIS 137568 (C.D. Cal. June 15, 2022).

### B.    Plaintiff Will Suffer Irreparable Harm

In recognition of the irreparable nature of the harm caused by patent infringement and the aim of the patent laws to prevent such commercial harm not compensable monetarily, the Patent Act expressly provides for injunctive relief in order to address infringement. *See* 35 U.S.C. § 283; *Shure, Inc. v. Clearone, Inc.,* No. 17 C 3078, 2019 U.S. Dist. Lexis 130685, at *76 (N.D. Ill. Aug. 5, 2019). Where a design patent owner has expended significant resources promoting products embodying their patent, losses resulting from infringement of such patents constitute irreparable harm. *Id*. (finding that loss of exclusivity afforded by virtue of patent rights constituted irreparable harm for which Plaintiff had no adequate remedy at law). The sort of irreparable harm resulting from patent infringement includes loss of exclusivity and damage to the patent owner's business reputation. *See id.*

Defendants' actions of selling and offering to sell the Infringing Products are causing a loss to Plaintiff's market share and goodwill, as well as its right to exclusivity for the creative design covered by its intellectual property. *See Mint, Inc. v. Iddi Amad*, No. 1:10-cv-9395, 2011 U.S. Dist. LEXIS 49813, at *3, n.23 (S.D.N.Y. May 9, 2011) ("[T]he loss of pricing power resulting from the sale of inexpensive 'knock-offs' is, by its very nature, irreparable.") (citing *Abbott Labs. v. Sandoz, Inc*., 544 F.3d 1341, 1362 (Fed. Cir. 2008). This Court may also presume irreparable harm where, as in this case, Plaintiff possesses a valid patent and have established patent infringement. *See Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed. Cir. 1997) (quoting *H.H. Robertson v. United Steel Deck, Inc*., 820 F.2d 384, 390 (Fed. Cir. 1987) ("In matters

13

involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement.").

Here, Plaintiff has shown that the Asserted Patent is essential to its business and creates a considerable amount of revenue for Plaintiff. *See* Yu Decl. ¶ 4. Defendants' unauthorized use of the Asserted Patent has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. *Id*. ¶ 9.

None of the Defendants have authorization or license to use the Asserted Patent for any purpose. *Id*. ¶ 8. Plaintiff has invested substantial time, money, and effort creating, licensing, and promoting the Asserted Patent. *Id*. ¶ 10. The extent of the harm to Plaintiff's business reputation, the goodwill associated therewith, and the possible diversion of customers due to loss in brand confidence are irreparable and incalculable, thus requiring immediate cessation of Defendants' patent infringement. *Id*. ¶ 11. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to Plaintiffs' goodwill was irreparable harm for which Plaintiffs had no adequate remedy at law). Plaintiff will suffer immediate and irreparable injury, loss, and damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).  *See* Yu Decl. ¶ 12.

Defendants are unfairly competing with Plaintiff by selling the infringing products at a lower or similar price. Plaintiff has suffered price erosion due to Defendants' massive dumping of infringing products on their webstores because Defendants have diverted customers who would have bought the genuine products from Plaintiff's online storefront. The nexus between Defendants' infringement and Plaintiff's harm is strong as Defendants' infringing products are almost visually indistinguishable from Plaintiff's genuine products. Defendants' infringing

activity is not otherwise lawful competition in the market because customers are not buying the infringing products for reasons other than the patented feature. ("[T]he patentee must show *some* connection between the patented feature and demand for the infringer's products. *Apple Inc. v. Samsung Elecs. Co.,* 735 F.3d 1352, 1355) (emphasis added); see also *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1337 (Fed. Cir. 2013) (Plaintiff needs to show a nexus between loss of sales and the infringement instead of sales that would be lost even if the offending feature were absent from the accused product.)

## C. The Balancing of Harms Tips in Plaintiff's Favor.

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) the extent to which the moving party will suffer irreparable harm without injunctive relief; (2) the likelihood that the moving party will succeed on the merits, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *AT&T Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). The threat of continued patent infringement without issuance of an injunction as well as the patent owner's loss of exclusivity due to patent infringement support a finding that the balance of hardships weighs in favor of awarding injunctive relief. *Virtual Studios, Inc. v. Beaulieu Grp., LLC*, 987 F. Supp. 2d 769, 781 (E.D. Tenn. 2013).

Defendants are entitled to little or no equitable considerations due to their willful behavior and direct infringement of Plaintiff's Asserted Patent. Courts have rightly refused to assign "harm" to defendants who assume such a risk. *See Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n. 12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."); *see also Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*, No. 1:13-cv-02451, 2014

U.S. Dist. LEXIS 112274 at *13, 2014 WL 3887515 (E.D.N.Y. Aug. 5, 2014) ("Absent an injunction, there will be further erosion of Plaintiffs' good will and reputation. Defendants, on the other hand, will be called upon to do no more than refrain from what they have no right to do in the first place.") (citation omitted). Defendants have been profiting and continue to profit from the sale of products that embody or otherwise infringe Plaintiff's Asserted Patent. Yu Decl. ¶ 15. Thus, Defendants have eliminated Plaintiff's exclusivity it was entitled to under the Patent Act. The balance of hardships tips decisively in Plaintiff's favor.

### D.    The Public Interest Is Served by Entry of the Injunction.

"[I]t is virtually axiomatic that the public interest can only be served by upholding [intellectual property] protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983). Further, federal courts have long held that intellectual property laws "are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted).

In the present case, the public interest would be served by issuing an injunction because the injury to the public is significant. The public has the right not to be defrauded and deceived as to the source of the goods and services it is purchasing from Defendants. The injunctive relief Plaintiff requests will specifically remedy any future injuries to the public by enjoining Defendants from further selling their Infringing Products and harming consumers. Defendants are directly defrauding the consuming public by palming off the Infringing Products as Plaintiff's genuine goods.

Courts routinely recognize that "the public has an interest in the protection of intellectual property, as first recognized by the framers of the constitution." *AFG Media Ltd., v. Poptrend-Official*, Civil Action No. 2:23-cv-1840, 2023 U.S. Dist. LEXIS 230686, at *24 (W.D. Pa. Dec. 29, 2023). Patent law was enacted to ensure that the owners of the patent are able to have the exclusive rights to their innovations. *Id.* Disallowing a patent owner their protections against infringers would go against the public's interest and run afoul of the central purpose of patent law. *See id.* Unless Defendants' unauthorized use of Plaintiff's Asserted Patent is enjoined, the public will continue to be confused and misled by Defendants' conduct. As such, equity and public interest requires that the requested injunction be issued.

**E.      Defendants Are Properly Joined in this Action.**

The Rule 20(a) joinder requirement is satisfied if the right to relief "arises out of the same transaction occurrence, or series of transactions. Fed. R. Civ. P. 20. The Third Circuit has adopted a permissive approach toward joinder where the Defendants do not necessarily even need to know about one another, as long as their actions are a part of the "same transaction, occurrence, or series of transactions or occurrences," and are logically related to one another. *Malibu Media, LLC v. Doe,* No. 12-2095, 2012 U.S. Dist. LEXIS 191022 at *5 (E.D. Pa. Sep. 27, 2012).

The allegations in Plaintiff's Complaint in the instant case demonstrate that the Defendants are acting in almost identical manner and during the same or substantially similar time frame to sell infringing products—collectively in the same occurrence of mass harm—and thus show a logical relationship between them that supports joinder. *See* Complaint at ¶¶ 36-42.

Plaintiff alleges that Defendants here took advantage of a set of circumstances—the anonymity and mass reach afforded by the internet and the cover afforded by international borders—to violate the Plaintiff's Asserted Patent with impunity. As shown by the evidence

17

attached to the Complaint at Exhibit 2, Defendants are all offering for sale and/or selling infringing products embodying the Asserted Patent without Plaintiff's approval to consumers in this Judicial District and throughout the United States. *See* Yu Decl. at ¶¶ 7-8. Further, at such an early stage of litigation, Plaintiff is not required to definitively prove the commonality of ownership of the Defendants without adversarial presentation and opportunity to conduct meaningful discovery.

Thus, at this stage, joinder of the Defendants listed on Schedule A to the Complaint is proper.

### F.  A Temporary Restraining Order Is Appropriate Here.

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Plaintiff requests a temporary injunction requiring Defendants to immediately cease all use of the Asserted Patent on or in connection with all Seller Aliases. Such relief is necessary to stop the ongoing harm to Plaintiff and to the goodwill attached to Plaintiff's Asserted Patent, and to prevent Defendants from continuing to benefit from their unauthorized use of the Asserted Patent.

The need for *ex parte* relief is magnified in today's global economy where online infringers and counterfeiters can operate anonymously over the Internet. Plaintiff currently has no way of knowing the scope and volume of Defendants' illegal operations, and how many other Seller Aliases are used to sell and distribute the Infringing Products. As cited above, this Court has routinely authorized immediate injunctive relief in cases involving the unauthorized use of another's intellectual property and counterfeiting. *See*, *e.g.*, *Xiaoyan Qian*, WDPA No. 2:25-cv-00184, ECF No. 16; *DDC Technology LLC*, WDPA No. 2:24-cv-00006, ECF No. 17; *Aquapaw*

*Brands, LLC*, WDPA No. 2:22-cv-01607, ECF No. 16; *Nifty Home Prods. Inc*, WDPA No. 2:22-cv-00994, ECF No. 16; *Airigan Solns., LLC*, WDPA No. 2:19-cv-00166, ECF No. 11.

### G.    Preventing the Fraudulent Transfer of Assets Is Appropriate.

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants will be in a position to elect to disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when Plaintiff's complaint seeks relief in equity. *See Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 325 (1999) (holding that asset freeze pending outcome of case is proper where Plaintiff seeks equitable relief); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the Plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of this case.").

In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its patent infringement claim and, therefore, according to the Patent Act, 35 U.S.C. § 284, Plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." In calculating enhanced damages, Plaintiff proposes using the *Read* factors as outlined in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), which include factors such as whether the infringer deliberately copied the ideas of another, whether the infringer investigated

19

the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, and the infringer's behavior as a party to the litigation. Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay Plaintiff all profits realized by Defendants for Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff. *FTC v. Commonwealth Mktg. Grp., Inc.,* 72 F. Supp. 2d 530, 536 (W.D. Pa. 1999).

Plaintiff has shown a strong likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants can and likely will hide or move their ill-gotten funds to other unidentifiable or offshore bank accounts outside of the jurisdiction of this Court. Accordingly, an ex parte asset restraint is proper here.

## PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld,* No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). While a party may not typically seek discovery prior to a Rule 26(f) conference (*see* Fed. R. Civ. P. 26(d)(1)), courts have broad power to permit expedited discovery. *See* Fed. R. Civ. P. 26(b)(2) and Fed. R. Civ. P. 65(d)(2)(C); *see also Curran v. Venango Cty.*, No. 1:23-cv-00019, 2023 U.S. Dist. LEXIS 74892, at *1-2 (W.D. Pa. Apr. 28, 2023) (quoting *Teets v. Doe One*, 2021 U.S. Dist. LEXIS 39831 (W.D. Pa. Mar. 3, 2021)) ("[C]ourts have broad discretion to manage the discovery process and may expedite or otherwise alter the time and sequence of discovery.");

20

*Leone v. Towanda Borough*, 2012 U.S. Dist. LEXIS 47594, 2012 WL 1123958 (M.D. Pa. Apr. 4, 2012) (applying good cause standard to request for expedited discovery)).

Plaintiff respectfully requests that the Court order expedited discovery from Defendants, and online marketplaces used by Defendants, regarding (1) email addresses or other contact information of Defendants; (2) the scope and extent of Defendants' infringement of the Asserted Patent; and (3) Defendants' account details including the IP addresses Defendants use to login and access their stores and accounts linked to the Seller Aliases and other information relating to Defendants' financial accounts [1], assets, and/or any other user accounts through which the infringing conduct has occurred.

The expedited discovery requested in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts and account users so that the proper Defendants can be discovered and their accounts restrained is necessary to ensure that these activities will be contained and constitutes good cause.

Expedited discovery is appropriate under these unique circumstances. Plaintiff has demonstrated both irreparable injury and its probability of success on the merits above. Considering the covert nature of Defendants, their business operations, and the fact that they are foreign individuals or entities with the incentive and capability to hide or destroy relevant business records and other discoverable information upon learning of this action, there is good cause for this Court to permit expedited discovery as it will prevent further injury to Plaintiff and assist Plaintiff in pursuing its claims against Defendants in recovering the damages to which it is entitled.

---

[1] Expedited discovery is necessary to ascertain Defendants' banking and payment system accounts. Defendants likely use third party payment processors (*e.g.*, Amazon Pay, PayPal, Payoneer, PingPong, etc.) to maintain pseudo-anonymity by interposing a third party between the consumer and Defendants. Therefore, expedited discovery regarding such financial accounts may uncover related entities engaging in the alleged patent infringement.

If this Court were to deny expedited discovery, Plaintiff may lose the opportunity to effectively pursue its claims against Defendants because there are several facts that Plaintiff cannot yet confirm, including: (1) the true identities of all Defendants; (2) the full scope of Defendants' unlawful conduct; (3) the source(s) and present location(s) of Defendants' inventory of Defendants' Infringing Products; and (4) the location(s) of the revenue received by Defendants from their unlawful conduct. *See Admarketplace, Inc. v. Tee Support, Inc.*, No. 1:13-cv-05635, 2013 WL 4838854, at *2 (S.D.N.Y. Sep. 11, 2013) (finding that a plaintiff "who has potentially meritorious claim and no ability to enforce it absent expedited discovery, has demonstrated good cause for expedited discovery") (citing *Dig. Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012)). Thus, only through an order from the Court allowing expedited discovery may Plaintiff be able to ascertain the full extent of Defendants' infringement of the Asserted Patent.

Under Fed. R. Civ. P. 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with Defendants that are given notice of the Order to provide expedited discovery. Accordingly, Plaintiff respectfully requests an *ex parte* order permitting expedited discovery to allow it to discover specific identifying information concerning Defendants' identities, financial accounts, assets, and sales of Defendants' Infringing Products. Plaintiff has carefully limited the information requested to include only what is necessary to prevent further irreparable harm.

### A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); Fed. R. Civ. P. 65(c). As a condition of preliminary injunctive relief pursuant to Fed. R. Civ. P. 65(c), a successful applicant for a preliminary injunction shall post a bond, "in such sum as the [district]

court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Thus, the bond "provides a fund to use to compensate incorrectly enjoined defendants." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 804 (3d Cir. 1989) (quotations omitted). Because of the strong and unequivocal nature of Plaintiff's evidence of infringing activities, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Five Thousand U.S. Dollars ($5,000.00) which is consistent with bond amounts in similar related cases in this district. *See, e.g., LKRB Industries LLC v. xuzhouaiyaxundianzishangwuyouxiangongsi et al* No. 2-24-cv-01601 (W.D.Pa. November 25, 2024) (Stickman, W.) (Temporary Restraining Order entered with $5,000 bond required).

## CONCLUSION

Plaintiff respectfully requests that this Court enter a Temporary Restraining Order enjoining Defendants' manufacture, distribution, importation, offering for sale, and/or sale of goods embodying Plaintiff's Asserted Patent and all other activity by Defendants that would constitute an infringement of Plaintiff's patent asserted in this action.

Date: April 7, 2026

Respectfully submitted,

By: /s/ Keaton Smith
Keaton Smith IL #6347736
Shengmao (Sam) Mu NY #5707021
Abby Neu IL #6327370
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (872) 294-3799
Email: ksmith@whitewoodlaw.com

*Counsel for Plaintiff*

23